In re Harry D. GARRISON, Joe Allen Jeans, Debtors.

Albert HOFFMAN, Trustee, Plaintiff,

v.

HERITAGE SAVINGS AND LOAN ASSOCIATION, Shirley A. Pinkston, John S. Pinkston, Defendants.

Bankruptcy No. 84 M 0773.

United States Bankruptcy Court, D. Colorado.

Jan. 16, 1986.

See also 48 B.R. 837.

---

Bruce Bernstein, Denver, Colo., for trustee-plaintiff.

Richard Marsh, Denver, Colo., for Heritage Sav. and Loan Assn.

Allen P. Mitchem, Denver, Colo., for Shirley A. and John S. Pinkston.

## ORDER DENYING COMPLAINT TO AVOID FRAUDULENT TRANSFER

JOHN F. McGRATH, Bankruptcy Judge.

In two prior hearings in this proceeding, this court ruled that a foreclosure sale and issuance of a certificate of purchase is a transfer avoidable under 11 U.S.C. § 548; that the fair market value of the real property in question was $85,000.00 at the time of the foreclosure sale; and that the Debtors were rendered insolvent by the foreclosure sale. The final issue to be determined is whether reasonably equivalent value was paid for the interest of the Debtors in the property that was transferred by the foreclosure sale.

Under Colorado law, as contrasted with the laws of most other states, a foreclosure sale does not automatically vest title in the purchaser at the sale. Rather, the debtor retains title to the property, subject to the right of the purchaser to obtain a trustee's deed to it if the debtor, or a junior lien creditor, fails to redeem. §§ 38–39–102, 103, 110, C.R.S. The purchaser obtains a certificate of purchase, not a deed to the property. Thus, the interest of the debtor transferred by the foreclosure sale is less than fee simple ownership. It is this interest that must be valued in determining whether reasonably equivalent value was paid for the interest.

Pinkston presented the testimony of John Pinkston, a joint owner of the real property, who stated that he valued the certificate of purchase at $35,844, the value he and his wife, Defendant, Shirley A. Pinkston, paid for it to Heritage Savings and Loan Association. In reaching that valuation, he considered the fair market value of the real property; the existence of junior liens, including a tax lien, against the property; the likelihood that a junior lienholder might redeem the property from foreclosure; and the fact that the Debtors were still in possession of the property.

While Mr. Pinkston is a real estate broker, he was not shown to have any particular expertise in the valuation of certificates of purchase nor to be in the business of buying and selling certificates of purchase. The Court must also bear in mind that, at a prior hearing, Mr. Pinkston testified that the fair market value of the real property in question, at the time of the foreclosure sale, was approximately $35,000, when he had subsequently mortgaged it for $75,000. Therefore, the court places little weight on his valuation testimony here.

Pinkston also presented the testimony of Ray Cooper, president of R. Cooper Financial, Inc., a licensed attorney and retired real estate appraiser, who has been in the mortgage finance business for 27 years. He testified that he has never valued certificates of purchase, and that, typically, a mortgage lender bids in the mortgage loan balance plus interest and expenses at a foreclosure sale. He testified that he can determine whether redemption by the mortgagor or junior lien creditor is likely to occur by comparing the market value of the property with the loan balance on the lien being foreclosed plus any senior liens. He further testified that his businesses rarely sold certificates of purchase because there is no market for them, and that redemptions from foreclosure rarely occur.

Art Bronstein, president of Mellon-Boulder Industrial Bank, testified on behalf of Heritage Savings and Loan Association. His company is in the business of making first and second loans against residential and small commercial properties. He has been in the mortgage lending business for over 20 years. He testified that his company will loan approximately 50 to 60 per cent of the market value on commercial property, and 70 to 85 per cent of the market value on residential property, taking into consideration any other liens against the property. He is responsible for determining when to foreclose and how much to bid

**530**

at foreclosure sales, and whether, when in a junior position, to redeem from foreclosure. He testified that he has never authorized a bid in excess of the mortgage debt plus accrued interest and expenses. In this case, he believed that the likelihood of redemption by the Debtors themselves was virtually nonexistent, but that it was almost 100 per cent likely that a junior lienholder would redeem. He further testified that, normally, a holder of a certificate of purchase would sell it for the price paid for it at foreclosure sale plus accrued interest, and would be happy to recoup that investment.

The court finds the testimony of Cooper and Bronstein of little assistance in this case. Neither is in the business of valuing certificates of purchase; neither is in the business of buying certificates of purchase. While they are both familiar with common industry practice regarding bids at foreclosure sales, the court does not accept that common industry practice necessarily determines the fair market value of the interest in property transferred by the issuance of the certificate of purchase. Thus, even though mortgagees routinely bid in their mortgage balances at foreclosure sales, the *value* of the interest in property they receive is not necessarily the amount bid. Consequently, the court is left with no testimony useful in the valuation of the interest transferred by the foreclosure sale.

The final evidence submitted by Pinkston is certain documentary evidence relating to junior liens on the property. The most relevant evidence are the schedules of liabilities submitted by the Debtors, of which the court took judicial notice. Those schedules reveal junior liens against the property of approximately $30,000. Under Colorado law, those liens survive the foreclosure sale in the form of a right to redeem from foreclosure. While, in this case, no redemption in fact occurred, this Court must examine the value of the interest transferred as of the date of the transfer. At the time of the transfer, the foreclosure sale, these liens were in existence and were not cut off by the foreclosure sale. Therefore, they must be considered in determining the value of the transferred interest.

This Court has located no decisions from this or any other jurisdiction addressing the effect of junior liens on the value of the transferred interest. Apparently, Colorado is rare in granting junior lienholders the right to redeem from foreclosure. Therefore, this issue is one of first impression.

Absent any helpful testimony attributing a different value to them, the court concludes that the full amount of the junior liens must be subtracted from the fair market value of the property in determining whether reasonably equivalent value was paid for the certificate of purchase. As of the date of sale, these liens are still in existence and present a threat of redemption. Thus, they cannot be ignored. In this case, the court found the fair market value of the real property to be $85,000. Deducting the bid by Heritage of approximately $35,000 and the junior liens of $30,000 leaves equity in the property of approximately $20,000. The court will again follow the method of valuation set forth in *In re Richardson*, 23 B.R. 434 (Bankr.Utah 1982), previously adopted in this case. By that method, the post-sale liens, here the junior liens, $30,000, are subtracted from the fair market value, $85,000, for a balance of $55,000, composed of $35,000 due to Heritage and $20,000 in equity. Comparing the $35,000 bid to this $55,000 figure, the court must conclude that this sum was reasonably equivalent value. While the price paid reflects only approximately 63 per cent of the value received, the court cannot find that this was unreasonable. The foreclosing creditor ran a significant risk of redemption by junior lienholders; the property was in a deteriorating condition, and the Debtors retained possession of the property at the time of sale, creating the possible necessity of legal action to remove them from the premises. Under these circumstances, the court finds that reasonably equivalent value was paid for the Debtors' interest in the property transferred by the foreclosure sale.

WHEREFORE, IT IS ORDERED that the Complaint to Avoid Fraudulent Transfer be and the same is hereby denied.